[Civ. No. 23295. First Dist., Div. Four. Mar. 24, 1967.]

NOVELITA CALLAHAN, a Minor, etc., Plaintiff and Appellant, v. CITY AND COUNTY OF SAN FRANCISCO, Defendant and Respondent.

James W. Funsten for Plaintiff and Appellant.

Thomas M. O'Connor, City Attorney, and George E. Baglin, Deputy City Attorney, for Defendant and Respondent.

DEVINE, P. J.—The appeal is from judgment for respondent based on an order sustaining demurrer to appellant's third amended complaint. The action is grounded upon the alleged violation of the California Tort Claims Act. The

succeeding paragraph contains, in substance, the charging allegations against the City and County of San Francisco:

On July 11, 1964, plaintiff Novelita Callahan, a minor, was a passenger in an automobile which was traveling on Brotherhood Way towards Lake Merced Boulevard, highways owned and maintained by the city. The area was frequently covered with fog, and there was fog on this day. Brotherhood Way was designed with the appearance of a freeway, but it ended abruptly at Lake Merced Boulevard. Ahead, there were logs and trees and a declivity into the lake. The street and intersection were so negligently maintained that it was reasonably likely that a careful driver, in foggy conditions, might continue over the end of the road into the logs, trees or lake. No adequate warning signs or devices were provided by the city.[1] As a proximate result of the negligence of the city so described, the driver of the car in which plaintiff was riding was unaware of the hazards, was caused to believe that he was on a high speed thoroughfare or freeway, and ran into the lake. It was reasonably foreseeable that as a consequence of the dangerous condition such an accident would occur.

There are also alleged the creation of the condition by the city, knowledge by the city of the condition, timely filing of a claim, and extremely serious injuries, including paralysis, to plaintiff.

The city demurred on the ground that the complaint states no cause of action.

### Effect of Earlier Pleading

The assault upon the third amended complaint, however, was not directed particularly at this pleading alone. The city called upon the court to consider also plaintiff's earlier pleadings. The order sustaining the demurrer is "upon the ground that, in the opinion of the Court, said complaint, considered in the light of the original verified complaint, does not state, and cannot be amended to state, facts sufficient to constitute a cause of action."

In the original complaint, which was verified by appellant's guardian ad litem, respondent city was not made a party, but the driver of the vehicle in which appellant was riding, James A. Day, Jr., was made a defendant and was charged with

---

[1]From oral argument in the superior court, it appears that changes have been made since the accident. This is noted not to suggest that evidence thereof would be admissible at trial, but merely as an informatory statement, because the area is well known.

wilful misconduct, as were other drivers of automobiles ''who were racing said automobiles with reckless disregard for the possible result.'' Respondent contends that this allegation is fatal to appellant's action against the city.

The initial complaint against the *city* was appellant's first amended complaint. Day was not a defendant therein. There was no allegation about racing of vehicles or wilful misconduct, and this holds true of the third amended complaint, the one to which demurrer was sustained without leave to amend.

The city contends that appellant cannot escape the allegation made in the original complaint about the racing by the driver, Day, and about his wiful misconduct, simply by dropping these from later pleadings. It is the rule that allegations of fact, once made under oath, may not ordinarily be dropped without adequate explanation merely for the purpose of avoiding their harmful effect to the pleader. (2 Chadbourn, Grossman & Van Alstyne, California Pleading, § 1111, pp. 360-361; 2 Witkin, Cal. Procedure (1954) § 592, pp. 1603-1604.) The verified allegations may be considered by the court at a hearing of the demurrer to a later pleading. (*Gressley* v. *Williams,* 193 Cal.App.2d 636 [14 Cal.Rptr. 496]; *Tostevin* v. *Douglas,* 160 Cal.App.2d 321 [325 P.2d 130].)

But the rule must be taken together with its purpose, which is to prevent amended pleading which is only a sham, when it is apparent that no cause of action can be stated truthfully. (*Avalon Painting Co.* v. *Alert Lumber Co.,* 234 Cal.App.2d 178, 184 [44 Cal.Rptr. 90].) We conclude that the allegations in the original complaint in the case before us do not constitute a bar to plaintiff's action against the city. The allegation of wilful misconduct was not against the city, of course, which was not even a party at the time, but was against Day. It was necessary, under the guest law, in order to state a cause of action against Day, that he be charged with wilful misconduct (or intoxication). (Veh. Code, § 17158.) The allegation of wilful misconduct under the guest law is but an allegation of a conclusion. (*Bartlett* v. *Jackson,* 13 Cal.App.2d 435 [56 P.2d 1298]; *Snider* v. *Whitson,* 184 Cal.App.2d 211 [7 Cal.Rptr. 353]; *Van Meter* v. *Reed,* 207 Cal.App.2d 866, 870 [24 Cal.Rptr. 688]; 2 Chadbourn, Grossman & Van Alstyne, California Pleading, §§ 957, 958, pp. 40-41.) In order to constitute wilful misconduct, the driver must be guilty of intentional, wrongful conduct done either with or without

wanton and reckless disregard of possible results. (*Reuther* v. *Viall*, 62 Cal.2d 470 [42 Cal.Rptr. 456, 398 P.2d 792].)

The allegation of reckless disregard for the possible result has to do with something mental or subjective on the part of the driver. (*Goncalves* v. *Los Banos Mining Co.*, 58 Cal.2d 916, 918 [26 Cal.Rptr. 769, 376 P.2d 833]; *Gillespie* v. *Rawlings*, 49 Cal.2d 359, 367 [317 P.2d 601]; *Woodson* v. *Everson*, 61 Cal.App.2d 204 [142 P.2d 338].) Whether plaintiff would have been able to prove her allegations against Day, we shall never know. Wilful misconduct is essentially a question of fact. (*Warren* v. *Sullivan*, 188 Cal.App.2d 150 [10 Cal.Rptr. 340].) It would be unfair to give the city the benefit, at the pleading stage, of assuming that these generic allegations against another may be taken as proved. (See *Avalon Painting Co.* v. *Alert Lumber Co.*, *supra*, 234 Cal.App.2d at p. 185.) If the city were entitled to this benefit, plaintiff would have been put to an election which the law does not impose upon her. If by an allegation of wilful misconduct she stated a cause under the guest law, she would take the risk of ruling out her action against the city; if, on the other hand, she failed to make this allegation, she would have no cause against the driver.

But what of the allegation of the specific act on Day's part, of racing in the fog? Let it be noted at once that this conduct is not in itself chargeable to plaintiff, the occupant of the vehicle. Negligence of the driver is not to be imputed to the passenger. (*Campagna* v. *Market Street Ry. Co.*, 24 Cal.2d 304, 309 [149 P.2d 281]; *Ross* v. *Wilcox*, 190 Cal.App.2d 213 [11 Cal.Rptr. 588].) Nor is contributory negligence presently an issue (although it is stated by appellant, in anticipation, that she begged the driver to stop.)[2]

The allegation of racing comes close to being equivalent to an allegation of negligence, because speed contests are forbidden by law (Veh. Code, § 23109), and violation of such a statute ordinarily constitutes negligence per se, in the absence of excuse or justification, which is unlikely in the case of racing. But the term "wilful misconduct" does not have relevance to the case now that the driver, Day, is no longer a party. It has been held that even racing does not, per se, constitute wilful misconduct. (*McLeod* v. *Dutton*, 13 Cal. App.2d 545 [57 P.2d 189], approved in *Parsons* v. *Fuller*, 8

---

[2]Respondent suggests that the driver's conduct in face of protest from the guest demonstrates wilful misconduct. It is not necessarily so. (*Katz* v. *Kuppin*, 44 Cal.App.2d 406, 408 [112 P.2d 681].)

Cal.2d 463, 464 [66 P.2d 430].) "Negligence," rather than wilful misconduct, is the appropriate term in considering the present posture of the case, the guest law aspect of it having disappeared. The guest law (Veh. Code, § 17158) makes "wilful misconduct" relevant only in actions against the driver or persons legally responsible for his conduct.

The question, therefore, is, assuming that Day was negligent because of his actions as charged by plaintiff in her original complaint, and assuming, as we must, that the allegations against the city are true: Does this exonerate the city as a matter of law from liability? Of course, the negligence of the third party may become a superseding cause, thereby striking out as a causative factor the public entity's negligence. But it is established that although a third person may have been concurrently negligent with a public entity, the latter is not necessarrily relieved from liability. (*Chavez* v. *County of Merced,* 229 Cal.App.2d 387 [40 Cal.Rptr. 334]; *Irvin* v. *Padelford,* 127 Cal.App.2d 135, 141 [273 P.2d 539]; *Hinton* v. *State of California,* 124 Cal.App.2d 622 [269 P.2d 154]; *Bauman* v. *City & County of San Francisco,* 42 Cal.App.2d 144, 154 [108 P.2d 989].) Foreseeability is the primary element. (*Osborn* v. *City of Whittier,* 103 Cal.App.2d 609, 615-616 [230 P.2d 132]; *Hession* v. *City & County of San Francisco,* 122 Cal.App.2d 592, 603 [265 P.2d 542]; *Parker* v. *City & County of San Francisco,* 158 Cal.App.2d 597, 605-608 [323 P.2d 108].) The question of proximate cause essentially is one of fact. (*Mosley* v. *Arden Farms Co.,* 26 Cal.2d 213, 219 [157 P.2d 372, 158 A.L.R. 872]; *Osborn* v. *City of Whittier, supra,* at p. 616; *Barker* v. *City of Los Angeles,* 57 Cal.App.2d 742, 748 [135 P.2d 573]; *Allen* v. *City of Los Angeles,* 43 Cal.App. 2d 65, 67 [110 P.2d 75]; *Bauman* v. *City & County of San Francisco, supra,* at p. 154.)

We conclude that if plaintiff has otherwise stated a cause of action against the city under the Tort Claims Act, a subject to which we shall proceed, the allegations of her earlier pleading are not destructive of her cause.

### The Present Pleading

We must now measure the allegations of the third amended complaint with the provisions of the Tort Claims Act.[3]

---

[3]There is no issue, however, at the present pleading stage, of the effect of section 830.6 of the Government Code, which has to do with

*Government Code section 830, subdivision (a)*. This subdivision reads: "'Dangerous condition' means a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." Respondent city argues that by the terms of the statute just quoted the governmental unit is not bound to anticipate the negligence of third persons; that the negligence of the driver of plaintiff's vehicle appears from the pleadings, as discussed above; that, therefore, no cause is stated or can be stated against the city. Respondent cites the following passage from Van Alstyne, California Government Tort Liability (Cont. Ed. Bar. 1964), pages 194-195: "This apparent exclusion of property conditions that will foreseeably cause injury to persons when the property or adjoining property is being used in a negligent manner seems to be a partial change in prior law. Under the Public Liability Act [Gov. Code, § 53050 et seq.], foreseeable negligent use was a hazard the entity was required to guard against, for concurrent third party negligence that proximately contributed to plaintiff's injury did not absolve the entity from liability. . . . Under the present statutory definition, however, 'even though it is foreseeable that persons may use public property without due care, a public entity may not be held liable for failing to take precautions to protect such persons' or others exposed to risk of harm by reason of their negligence."

But whether or not a public entity must anticipate and guard against negligence of anyone who uses or comes in contact with public property, it is to be observed that in this particular case it is plaintiff's pleading that the highway resembles a freeway and under certain circumstances constitutes a trap for a motorist *whether careful or not*. Plaintiff does not say, and is not required to say, that the driver with whom she was riding was exercising due care. Professor Van Alstyne says: "Foreseeable use with due care is an element of liability only as defined in 'dangerous condition.' . . . The plaintiff is required merely to establish that the condition created a substantial risk of harm to *persons, generally,* who would use the property or adjacent property with due care in a foreseeable

approved plans or designs, because there is no pleading which relates to approval. In this respect, the case resembles *Teall* v. *City of Cudahy*, 60 Cal.2d 431, 434-435 [34 Cal.Rptr. 869, 386 P.2d 493].

manner.'' (*Id.,* p. 195.) The Law Revision Commission comment following Government Code section 830 is generally to the same effect; it reads as follows: ''Although the condition will not be considered dangerous within the meaning of this chapter unless it creates a hazard to those who foreseeably will use the property or adjacent property *with due care,* this does not require that the injured person prove that he was free from contributory negligence. Contributory negligence is a matter of defense under subdivision (b) of Section 815. The plaintiff is, however, required to establish that the condition was one that created a hazard to *a person* [italics supplied] who foreseeably would use the property or adjacent property with due care.'' If the driver himself might state a cause, leaving to the defense the plea of contributory negligence, a guest should be able to state her cause unimpeded by allegations in an earlier pleading against the driver, the effect of which (if proved) on causation is a question of fact.

There is logic, as well as the quoted commentaries, in favor of appellant's position that section 830, subdivision (a) defines dangerous condition with relation to the general public and not to a particular driver or user or person coming into contact with public property. It is this: (1) If in cases involving streets and highways the liability of the city were confined to cases wherein a particular driver was using due care, the public entity would gain, in practical effect, an imputation of negligence to the occupants of any vehicle, the driver of which was not at the time exercising due care. Although the condition were dangerous to the public in general, the city would be exonerated from liability to innocent parties by reason of the negligence of another, even if the other's negligence did not break the chain of causation. Such a holding would bar liability of the governmental unit in many cases affecting wholly blameless parties; for example, all of the passengers of a bus would be denied relief if their driver's negligence concurred with negligence of a governmental unit in maintaining a *generally* dangerous condition. (2) It is not to be thought that the Legislature intended to diminish the responsibility of governmental units to this extent when the Legislature did not say so clearly. (3) The words of section 830, subdivision (a) are principally descriptive of the condition of the property rather than of the person using it. Unless they mean that the responsibility of the governmental unit is to the public at large, as distinguished from a particular per-

son, there would exist this incongruous situation: the property would at the same time be in a dangerous condition as to persons generally, but not in a dangerous condition as to the particular user and to those persons subject to, but not responsible for, his conduct.

Respondent places much reliance on *Rodkey* v. *City of Escondido,* 8 Cal.2d 685, 689 [67 P.2d 1053]. In that case, there was stated the incontrovertible rule that a municipality is not an insurer of the safety of travelers on its streets. But the defect was a minor one caused by a slight sinking. There was no evidence that any injury had occurred in three years of the condition, although some 400,000 automobiles had passed over the surface. The case obviously is different from the trap situation described in the pleadings herein. (Incidentally, the *Rodkey* case points, by indirection, to a possible manner of proving a dangerous condition even to careful drivers, namely, other accidents. In the argument before the superior court, which has been included by stipulation in the record before us, respondent argues that there is no allegation of other accidents. Such an allegation would be one of evidentiary facts and should not be contained in the complaint.)

 *Government Code section 830.8.* Respondent calls attention to this section, in which public entities are declared immune from liability for injuries caused by failure to provide "traffic or warning signals, signs, marking or devices described in the Vehicle Code" except where the warning device "was necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care." The immunity, however, is inapplicable when a warning sign is necessary to warn of a concealed trap. (Van Alstyne, California Government Tort Liability (Cont. Ed. Bar. 1964) § 6.33, p. 221; Gov. Code, § 830.8, Law Revision Commission comment; see *Schauf* v. *Southern Cal. Edison Co.,* 243 Cal.App.2d 450, 463 [52 Cal.Rptr. 518].)

 *Government Code section 831.* This section exempts public entities from liability caused by the effect on the use of streets and highways of weather conditions as such, but does not exonerate a public entity from liability for injury proximately caused by such effect if it would not be reasonably apparent to, and would not be anticipated by, a person exercising due care. The allegations of the complaint relate not only

to a condition of fog, but also to the layout of the streets and especially to the appearance of a freeway where actually there was none, and to the lack of signs. This section, like section 830, subdivision (a), in its reference to persons using due care, has to do with the public at large as distinguished from one particular driver.

Here, again, the pleading does not resolve the case against the plaintiff. There is a factual issue to be determined. During the argument before the superior court, counsel for appellant stated that, in fact, the cars were not in fog until about the last block of their travel. Of course, we cannot tell whether this statement, or any of the allegations of the complaint, will be sustained by proof. There will be ample opportunity to test this later, even perhaps on motion for summary judgment if the facts at that point show that the action has no merit. (See *Dahlquist* v. *State of California*, 243 Cal.App.2d 208, 214 [52 Cal.Rptr. 324].) ▮ But the third amended complaint states a cause of action.

Judgment reversed, with direction to the court to overrule the demurrer to the third amended complaint.

Rattigan, J., and Christian, J., concurred.

A petition for a rehearing was denied April 21, 1967, and respondent's petition for a hearing by the Supreme Court was denied May 17, 1967.