Filed 6/20/24  P. v. Perez CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B327685 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA005708) |
| v. | |
| EDDIE ANTHONY PEREZ, | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Defendant and Appellant. | NO CHANGE IN THE JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on May 29, 2024, be modified as follows:

1. On page 8, the first full paragraph, beginning "Relatedly, defendant asserts" is deleted and the following paragraph is inserted in its place:

Relatedly, defendant asserts that the trial court misunderstood the elements of directly aiding and abetting an implied malice murder because the court (1) did not explicitly refer to a "high degree of probability" of death; and (2) noted, in the alternative, that "[e]ven if [it] were to credit [defendant's] statements that he only intended to scare the two men, the act of firing a rifle to scare—to scare someone from a moving vehicle *poses inherent risks* and would be sufficient . . . to support a finding that [defendant] aided and abetted implied malice murder." (Italics added.) These assertions also lack merit. Although the court did not use the phrase "high degree of probability" in its ruling, the court *did* explain the applicable mens rea requires proof that the defendant "know[] that the act is dangerous to human life and act[] in conscious disregard for human life," and these standards are synonymous. (*People v. Cleaves* (1991) 229 Cal.App.3d 367, 377-378 ["high probability of death" and "dangerous to human life" are "alternative definitions for the same concept"]; *People v. Patterson* (1989) 49 Cal.3d 615, 626-627 ["An act is inherently dangerous to human life when there is 'a *high probability* that it will result in death'"].) The court's subsequent, passing use of the phrase "poses inherent risks" as a shorthand reference does not negate or call into question its application of the right standard. Defendant is correct that shooting a gun into the air

2

does not *compel* a finding of a high degree of probability of death, but it can *support* one—and that is all that matters for substantial evidence review. (*In re Ferrell* (2023) 14 Cal.5th 593, 606-607 [so holding].)  And even if we assume that it could not support such a finding, any error in the trial court's alternative ruling based on its assumption that Rosales only intended to scare the victims does not undermine its primary ruling that Rosales intended to shoot them.

\*     \*     \*

There is no change in the judgment.

Appellant's petition for rehearing is denied.

_____

ASHMANN-GERST, Acting P. J.  CHAVEZ, J.  HOFFSTADT, J.

3

Filed 5/29/24  P. v. Perez CA2/2 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B327685 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA005708) |
| v. | |
| EDDIE ANTHONY PEREZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lee W. Tsao, Judge.  Affirmed.

Paul R. Kleven, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant

Attorney General, Scott A. Taryle and David E. Madeo, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Eddie Anthony Perez (defendant) was convicted of second degree murder (Pen. Code, § 187, subd. (a)).[1]  Defendant now appeals from an order denying his petition for resentencing under section 1172.6 following an evidentiary hearing.[2]  Concluding there was no error, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

I.    **Facts[3]**

A.    ***The underlying crime***

Defendant was asleep when he got a call from Gilbert Eugene Rosales (Rosales) around 1:30 a.m. on the morning of October 12, 1990.

Rosales had gotten into an altercation with several individuals, and wanted defendant to bring a gun "because there was trouble."  Defendant obliged.  He swung by to pick up

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

[2]    Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10). We therefore refer to the law formerly codified at section 1170.95 as section 1172.6.

[3]    We have drawn these facts from our prior, unpublished opinion affirming defendant's conviction on appeal (*People v. Rosales and Perez* (Jan. 27, 1993, B062327) [nonpub. opn.]), but have independently confirmed them by examining the underlying trial record, of which we took judicial notice.

2

Rosales and a third person, and drove them all to the location of the earlier altercation.

As they were arriving at that location, they came upon two men standing in the street near a vehicle, and Rosales proclaimed, "Those are the guys." Defendant slowed the car. As defendant continued to drive closer, Rosales loaded the gun defendant brought with the ammunition defendant kept behind the seat. When defendant's car was approximately 10 to 15 yards past the two men, Rosales asked defendant to open the hatchback of the car. Again, defendant obliged. Rosales then opened fire through the open hatchback, hitting one of the men—Steven Rangel.

Defendant remarked, "I think you got one." Then he drove the three away from the scene.

Rangel died from a gunshot wound.

### B. *Charging, conviction, and appeal*

The People charged defendant with first degree murder of Rangel (§ 187, subd. (a)), and discharging a firearm at an occupied motor vehicle (§ 246). The People also alleged that defendant furnished a firearm for the purpose of aiding and abetting another person to commit a felony (§ 12022.4), and that a principal was armed with a firearm within the meaning of section 12022, subdivision (a)(1).[4]

At trial, the jury was instructed that defendant could be liable for murder as a direct aider and abettor to the murder

---

[4] Rosales was also charged with first degree murder (§ 187, subd. (a)) and discharging a firearm at an occupied motor vehicle (§ 246), and the People further alleged that he inflicted great bodily injury and death on the victim as a result of discharging a firearm from a motor vehicle (§ 12022.55) and personally used a firearm within the meaning of section 12022.5.

(using CALJIC No. 3.01) or as aiding and abetting Rosales in the precursor shooting, the natural and probable consequence of which was murder (using CALJIC No. 3.02).

A jury convicted defendant of second degree murder and found true the special allegations. The jury found defendant not guilty of discharging a firearm at an occupied motor vehicle. The trial court sentenced defendant to 15 years to life in state prison.[5]

Defendant appealed his conviction and we affirmed in an unpublished opinion.

## II. Procedural Background

On February 14, 2019, defendant filed a petition seeking resentencing under section 1172.6. The trial court summarily denied the petition. In an unpublished opinion, we reversed the summary denial and remanded for an evidentiary hearing. (*People v. Perez* (May. 20, 2022, B310887) [nonpub. opn.].)

At the evidentiary hearing on remand, the parties did not introduce any new evidence, choosing instead to rely solely on the record from defendant's criminal trial. After entertaining argument, the trial court independently found that defendant was guilty of second degree murder on the theory that he directly aided and abetted the implied malice murder committed by Rosales.

Defendant filed this timely appeal.

## DISCUSSION

Defendant challenges the trial court's finding that he is ineligible for relief under section 1172.6 because he is guilty of murder as the direct aider and abettor of a perpetrator who

---

[5]    A jury convicted Rosales of first degree murder and found true all the special allegations; Rosales was sentenced to 30 years to life in state prison.

committed murder with implied malice. As pertinent here, section 1172.6 is the procedural vehicle by which persons can seek to vacate a prior murder conviction that was based on a theory of criminal liability subsequently invalidated by our Legislature. (§ 1172.6, subd. (a).) Directly aiding and abetting an implied malice murder remains a valid theory of liability for murder. (*People v. Reyes* (2023) 14 Cal.5th 981, 991 (*Reyes*); *People v. Gentile* (2020) 10 Cal.5th 830, 850, abrogated on other grounds as stated in *People v. Wilson* (2023) 14 Cal.5th 839, 869.) Thus, our task is to evaluate whether substantial evidence supports the trial court's finding that defendant is guilty of murder under this theory. (*People v. Vargas* (2022) 84 Cal.App.5th 943, 951; *People v. Sifuentes* (2022) 83 Cal.App.5th 217, 233-234.) In so doing, we view the evidence in the light most favorable to the court's finding, drawing all reasonable inferences in support of that finding. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) Because "'we *must* begin with the presumption that the evidence . . . *was* sufficient,'" it is defendant, as the appellant, who "'bears the burden of convincing us otherwise.'" (*People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1430.)

A person is guilty of an implied malice murder as a direct perpetrator only if (1) he intentionally engaged in an act; (2) the natural and probable consequences of that act "involve[] a high degree of probability that it would result in death"; (3) at the time the person acted, he knew the act entailed that danger; and (4) the person acted with "conscious disregard for life." (CALCRIM No. 520; *Reyes*, *supra*, 14 Cal.5th at pp. 989, 999.) A defendant is guilty of a crime as a direct aider and abettor if (1) the direct perpetrator committed the crime; (2) the defendant had "knowledge of the [direct perpetrator's] unlawful purpose"; (3) the

5

defendant intended to aid and abet the commission of the crime; and (4) the defendant said or did something that "aid[ed], promote[d], encourage[d] or instigate[d] the commission of the crime." (CALCRIM No. 401; *People v. Cooper* (1991) 53 Cal.3d 1158, 1164.) Taken together and plugging in the appropriate roles from this case, defendant is guilty of second degree implied malice murder as a direct aider and abettor if (1) Rosales committed an implied malice murder, (2) defendant knew Rosales was going to open fire at other individuals, (3) the natural and probable consequences of doing so entail a high degree of probability that death will result, (4) defendant knew that opening fire involved that dangerous probability, (5) defendant consciously disregarded that danger, (6) defendant intended to aid Rosales in the shooting, and (7) defendant did some act to aid Rosales in the shooting. (*Reyes*, at p. 991 [proper focus is on aiding and abetting the "life-endangering act," and not "the crime"].)

Substantial evidence supports the trial court's finding that defendant was guilty of directly aiding and abetting Rosales in murdering Rangel with implied malice. Rosales committed the crime of murder. Defendant knew that Rosales intended to shoot at others because Rosales called defendant to bring him a gun, said there would be "trouble," loaded the gun in defendant's presence, asked defendant to open the hatchback, and then took aim at the men standing in the street. Shooting at other people involves a high degree of probability of death. Defendant knew that shooting at people entails a high probability of death. Defendant consciously disregarded that danger by bringing the gun and opening the hatchback so that Rosales could open fire.

Defendant intended to help Rosales because he undertook those acts. And those acts aided Rosales in undertaking the shooting.

Defendant challenges the propriety of the trial court's ruling denying his resentencing with what boils down to two clusters of arguments.

First, defendant argues that there was insufficient evidence that Rosales engaged in an act with a high degree of probability of death because all the witnesses testified that Rosales merely meant to "scare" his victims by shooting over their heads rather than to *kill* his victims by shooting *at* them and, relatedly, Rosales maintained that he fired the gun just as the car hit a dip in the road and thus caused him to shoot closer to the ground. Because all the testimony showed at best an intent to scare or that the accuracy of Rosales's aim was an unfortunate fortuity, defendant reasons, there is insufficient evidence of an intent to shoot *at* someone and hence insufficient evidence of an act carrying a high degree of probability of death. Defendant is wrong. A trier of fact (here, the trial court) is well within its rights to reject all the testimony at trial in favor of circumstantial evidence to the contrary. (E.g., *Lee v. Ashizawa* (1964) 60 Cal.2d 862, 865; *Stevens v. Parke, Davis & Co.* (1973) 9 Cal.3d 51, 68.) Because the fact that Rosales struck one of his victims with a bullet is circumstantial evidence that he was aiming at them, the trial court here could reasonably conclude that Rosales was shooting *at* the victims and disregard all testimony—most of which was self-serving—to the contrary. Indeed, that is precisely what the court did when it indicated that it gave "little weight to [defendant's] statement that he only thought that [Rosales] was going to scare . . . the two men." Defendant asserts that the evidence of whether defendant *slowed* the car or *stopped* the car

7

prior to the shooting was never resolved, but this is not significant in the assessment of defendant's guilt.

Relatedly, defendant asserts that the trial court misunderstood the elements of directly aiding and abetting an implied malice murder because the court (1) did not explicitly refer to a "high degree of probability" of death; and (2) noted, in the alternative, that "[e]ven if [it] were to credit [defendant's] statements that he only intended to scare the two men, the act of firing a rifle to scare . . . would be sufficient . . . to support a finding that [defendant] aided and abetted implied malice murder."  These assertions also lack merit.  Although the court did not recite the elements of implied malice murder in its ruling, section 1172.6 did not require that recitation and nothing in the record indicates that the court misunderstood those elements; in applying substantial evidence review, we construe a trial court's silence as evincing a proper understanding and application of the law—not, as defendant would suggest, as evincing a misunderstanding and misapplication of the law.  (*In re Julian R.* (2009) 47 Cal.4th 487, 498-499; *In re Johnson* (1965) 62 Cal.2d 325, 330; see generally Evid. Code, § 664.)  Defendant is correct that shooting a gun into the air does not *compel* a finding of a high degree of probability of death, but it can *support* one—and that is all that matters for substantial evidence review.  (*In re Ferrell* (2023) 14 Cal.5th 593, 606-607 [so holding].)  And even if we assume that it could not support such a finding, any error in the trial court's alternative ruling based on its assumption that Rosales only intended to scare the victims does not undermine its primary ruling that Rosales intended to shoot them.

Second, defendant argues that the trial court should have treated his relative youth at the time of the crime (he was 19

8

years old) "more seriously" as tending to negate his ability to appreciate—and hence consciously disregard—the dangers of his conduct. While youth is a relevant factor of implied malice (e.g., *People v. Ramirez* (2021) 71 Cal.App.5th 970, 987), the court here explicitly considered and discussed defendant's youth, and further commented it did not "make its ruling lightly." The court nevertheless went on to conclude that defendant's youth did not entirely negate his otherwise callous conduct in supplying the murder weapon, transporting the shooter to the location of the shooting, facilitating the shooting by opening the hatchback, and then driving off after remarking that Rosales "got one." (Accord, *People v. Palomar* (2020) 44 Cal.App.5th 969, 978 [failing to assist a wounded victim manifests "a callous indifference to human life"].) At bottom, defendant asks us to reweigh the evidence differently than the trial court; this is beyond our purview on substantial evidence review. (*People v. Owens* (2022) 78 Cal.App.5th 1015, 1022.)

**DISPOSITION**

The order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT

We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
CHAVEZ

9